**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3663-21

IN THE MATTER OF R.B.,
GARDEN STATE YOUTH
CORRECTIONAL FACILITY,
DEPARTMENT OF
CORRECTIONS.

_____

Argued December 4, 2023 – Decided March 8, 2024

Before Judges DeAlmeida and Bishop-Thompson.

On appeal from the New Jersey Civil Service Commission, Docket No. 2020-2438.

Samuel Michael Gaylord argued the cause for appellant R.B. (Szaferman Lakind Blumstein & Blader, PC, attorneys; Samuel Michael Gaylord, on the brief).

Eric Alexander Zimmerman, Deputy Attorney General, argued the cause for respondents New Jersey Department of Corrections and Garden State Youth Correctional Facility (Matthew J. Platkin, Attorney General, attorney; Sara M. Gregory, Assistant Attorney General, of counsel; Eric Alexander Zimmerman, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission

(Levi Malcolm Klinger-Christiansen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant R.B.[1] appeals from a July 31, 2022 final administrative decision by the Civil Service Commission (CSC) terminating R.B.'s employment as a senior correctional police officer with the New Jersey Department of Corrections (DOC). We affirm.

I.

R.B. was hired by the DOC in 2013 and was assigned to the Garden State Youth Facility. In October 2018, R.B. was arrested for a domestic violence incident (2018 incident) involving his longtime girlfriend, T.T. A temporary restraining order (TRO) was entered, and criminal charges were filed. Both the TRO and the criminal charges were subsequently dismissed. The DOC did not impose any disciplinary action.

On August 28, 2019, Mount Laurel Police Department (MLPD) officers were called to R.B.'s apartment in the early morning hours concerning a domestic dispute (2019 incident) between R.B. and T.T. The parties' versions of the incident differed. When the officers arrived, R.B. was standing outside

---

[1] We use initials to protect the parties' privacy. R. 1:38-3(d)(9) to (10).

on the sidewalk. He stated that he had an "altercation" with T.T. when she was late getting home from work. According to R.B., T.T. became "agitated" and "yelled" at him on the phone when she told him that she had a flat tire and was waiting for roadside assistance. When she arrived at home, she "yelled" that R.B. did not believe her, and she started breaking household items. R.B. claimed that he tried to leave the apartment and called police.

However, when the officers interviewed T.T., she explained that an argument happened when she arrived at the apartment. According to T.T., R.B. placed both his hands around her neck and held her down on the bed. She was able to free herself, but R.B. again grabbed her neck with both hands and held her against the wall. T.T. stated that her breathing was restricted. She also stated that R.B. "threw" her into the television, resulting in a broken cable box. The officers saw visible signs of injury to T.T.'s neck and elbow. T.T. stated that R.B. had torn necklaces off her neck during the altercation, which were found by the officers in the hallway.

R.B. was arrested and charged with third-degree aggravated assault under N.J.S.A. 2C:12-1(b)(13). T.T. applied for and was granted a TRO, which was later dismissed. T.T. later gave a signed and notarized statement to the MLPD recanting her prior testimony and instead claimed that she "[did] not remember

3

how the items in the home were broken." The criminal charge was downgraded to simple assault and subsequently dismissed.

The next day, on August 29, 2019, the DOC issued a Preliminary Notice of Disciplinary Action (PNDA), specifying the domestic violence incident demonstrated conduct unbecoming and violated the DOC's rules and regulations. R.B. was charged with (1) conduct unbecoming a public employee under N.J.A.C. 4A:2-2.3(a)(6); (2) other sufficient cause under N.J.A.C. 4A:2-2.2(a)(12); (3) Human Resources Bulletin 84-17, as amended, C-11, conduct unbecoming of an employee; and (4) Human Resources Bulletin 84-17, as amended, E-1 violation of rule, regulation, policy, procedure, or administrative decision.

R.B. was suspended and removal from employment was recommended. Following a pretermination hearing, R.B.'s suspension without pay was continued based on the "severity of the charges" and the "direct impact" of the charges on Bennett's position as a law enforcement officer.

In February 2020, the DOC held a disciplinary hearing. After considering the testimony and documentary evidence from DOC and R.B., the hearing officer determined the penalty of removal was appropriate. On March 13, 2020, the DOC issued a Final Notice of Disciplinary Action (FNDA), removing R.B.

4

from his position. R.B. appealed the disciplinary action to the CSC, and the contested matter was transferred to the Office of Administrative Law (OAL).

A two-day hearing was held before the administrative law judge (ALJ). The DOC presented testimony from the following three witnesses: Maria Jackson, Brian Darcy, and Matthew Jankaitis. Jackson, an investigator in the DOC's Special Investigations Division (SID), testified that she conducted the investigation into the 2019 incident and concluded R.B. was the initial aggressor. R.B. had been placed in a "weapon's restricted post" because of the TRO and criminal charges associated with the 2019 Incident. She also testified that R.B. did not have a state-issued weapon in connection with his employment. However, he owned an off-duty weapon that had been confiscated by the prosecutor's office because of the 2018 domestic violence incident. T.T. did not respond to Jackson's request for an interview.

Darcy, a DOC administrative lieutenant, testified that he was shift commander on the date of the 2019 incident. After he received notification from the MLPD regarding the domestic dispute, he notified SID and the DOC's information clearinghouse. Darcy then explained that "correctional officers are required to conduct themselves in a professional manner both on and off duty and they are not to act in a way that betrays the public trust." He highlighted

5

Sections 2 and 3 of the DOC rules and regulations that prohibit correctional officers from engaging in threatening or assaultive conduct. Darcy stated R.B.'s actions also violated Article 1, Section 2 of the DOC's rules and regulations because by breaking the law, he violated the public's trust.

MLPD Officer Jankaitis testified regarding the 2019 incident. He stated the dispute was a "must arrest" situation based upon his observations at the scene, which was confirmed by the photographs.

R.B. testified concerning the 2019 incident. He stated T.T. was late getting home, and he had called her at approximately 2:30 a.m. When R.B. called T.T., she said she had a flat tire and was on the phone with roadside assistance. When T.T. came to the apartment, she "yelled" at him that he did not believe her. R.B. claimed that he attempted to avoid "confrontation," and as he attempted to leave, he was "hit with the lamp." When R.B. ran to the closet to get his uniform, she started to "attack" him using the television, a pot, and "anything she could get her hands on." He then "dropped everything" and ran outside because "his job was on the line." R.B. claimed T.T. broke the television stand. He also was unaware as to how T.T.'s necklaces were on the floor. According to R.B., T.T. was "lying" about the domestic disputes.

6

In regard to the 2018 incident, R.B. testified his personal weapon was confiscated by the Willingboro Police Department as a result of his arrest and the TRO. As of August 2019, R.B.'s personal weapon had not been returned because SID was still conducting an investigation.

In a May 4, 2022 written decision, the ALJ upheld R.B.'s removal, concluding the "seriousness of these charges relating to the 2019 domestic violence incident warrant[ed] imposition of the penalty of termination despite [R.B.'s] lack of disciplinary history." The ALJ reasoned that R.B.'s return to the position of a senior correctional police officer "would be contrary to the [DOC's] interest in maintaining the public's trust and confidence."

On June 20, 2022, the CSC issued a final administrative decision adopting the ALJ's findings of fact and conclusions of law.

II.

On appeal, R.B. argues (1) that the DOC failed to sustain its burden of proof and (2) the CSC's decision that progressive discipline was not appropriate was arbitrary and capricious.

Our review of quasi-judicial agency determinations is limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "An

agency's determination on the merits will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27) (internal quotation marks omitted).

We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). That presumption is particularly strong when an agency is dealing with specialized matters within its area of expertise. Newark, 82 N.J. at 540. We, therefore, defer to "[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility . . . ." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238-39 (App. Div. 2019) (internal quotation marks omitted) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). However, if there is "any fair argument" supporting the agency action, it must be affirmed. In re Stormwater Mgmt. Rules, 384 N.J. Super. 451, 465-

66 (App. Div. 2006). The party challenging the administrative action bears the burden of making that showing. Lavezzi, 219 N.J. at 171.

Applying those standards to our review of the record and R.B.'s contentions, we affirm substantially for the reasons expressed in the ALJ's initial decision, which were accepted and adopted by the CSC. We add the following comments.

The CSC adopted and agreed with the ALJ's determination the "seriousness of these charges relating to the 2019 domestic violence" warranted removal. New Jersey courts have found the phrase "conduct unbecoming" to be "elastic" and have defined it to include "any conduct which adversely affects the morale or efficiency of the bureau . . . [or] which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services." Karins v. City of Atlantic City, 152 N.J. 532, 554 (1998) (quoting In re Emmons, 63 N.J. Super. 136, 140 (1960)). Such a finding of misconduct "may be based merely upon the violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct." Ibid. (quoting Hartmann v. Police Dep't of Ridgewood, 258 N.J. Super. 32, 40 (App. Div. 1992)).

Under the theory of progressive discipline, an agency is not required to consider progressive discipline in every matter; progressive discipline is not a "fixed and immutable rule to be followed without question." In re Carter, 191 N.J. 474, 484 (2007). Progressive discipline is not necessary "when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest." In re Herrmann, 192 N.J. 19, 33 (2007). As correctly noted by the ALJ, R.B.'s 2019 domestic violence incident was considered a violation of the implicit standard of good behavior expected of law enforcement officers. Therefore, we reject R.B.'s contention that the CSC failed to utilize progressive discipline, and we uphold his removal. Consequently, we decline to conclude the CSC's decision was arbitrary, capricious, or unreasonable.

To the extent we have not specifically discussed any remaining arguments raised by R.B., we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10